BENJAMIN F. VOORHEES, Respondent, *v.* JOHN T. HOWARD, *et al.*, Appellants.

EQUITY. ACTION. CREDITOR'S BILL. PLEADINGS. COMPLAINT. PRAC-
  TICE. LEGAL AND EQUITABLE REMEDIES. LEGAL REMEDY TO BE
  EXHAUSTED BEFORE EQUITABLE REMEDY IS INVOKED. JURISDICTION.

An equitable tribunal extends equitable relief upon equitable principles,
  and the party who invokes its aid must comply with the rules which it
  has established.

Where a remedy is sought by an action under the Code, in the nature of
  what, under the old practice, was known as a creditor's bill, it is necessary
  for the complaint to show, affirmatively, that an honest attempt has been
  made to collect the debt by the issuing and return of an execution against
  the judgment debtor; and where there were several defendants jointly
  liable thereon, that such an effort has been made, and such remedy ex-
  hausted against all the judgment debtors. Hence,

Where the complaint in such action set forth, concerning one of such joint
  debtors, only that he was deceased at the time of commencing this suit,—
  which was sufficient reason for not making him a defendant in the action,—
  it is defective, in that it is not inconsistent with any averment therein, to
  presume that he may have been living at the time the executions were
  issued and returned, and may have possessed personal property sufficient
  to satisfy the executions, or real estate upon which the judgments were
  liens adequate to their satisfaction.

*I. T. Williams*, for the appellants.

THE defendant Fremont owed the defendant Howard
$12,500 and upward. The defendant Howard owed the
plaintiff nearly that sum, upon two judgments against said
Howard and others, of which the plaintiff had become the
assignee. This action was brought to compel Fremont to
pay over to the plaintiff, of the sum due from him to the
defendant Howard, sufficient to satisfy those two judgments.

One of the judgments in question was recovered in the
Court of Common Pleas of the city and county of New York,
in April, 1854, upon a note made by the defendant Howard,
and one Joseph Howard, his father, now deceased, by the
firm name of J. Howard & Son, against both of said makers.
The other of said judgments was recovered in the Supreme
Court, first district, and docketed in the city of New York,

in January, 1855, upon a note made by the said firm of J. Howard & Son, and indorsed by one Edward Mills, against both makers and indorser.

Upon both of these judgments executions were, shortly after their rendition, issued to the sheriff of the city and county of New York, and were both duly returned unsatisfied in whole. At the time of the docketing of the said judgments, and issuing and return of said executions, the firm of J. Howard & Son, composed of the defendant Howard and Joseph Howard, deceased, was largely engaged in carrying on business in the city of New York.

It appears that Joseph Howard died before the commencement of the action, but when he died, or where he resided during his life-time, does not appear, save that his place of business was the city of New York. It further appears, that Mills was insolvent, and that John T. Howard had no property other than the claim against Fremont in question.

No objection was taken by demurrer, or answer, to any defect of parties.

The referee dismissed the complaint, finding, as a matter of law, that the plaintiff had neither alleged nor proved facts sufficient to entitle him to the relief demanded in the complaint, or any relief in the action.

It appears from the opinion of the referee, that the ground of his decision was, that it did not appear affirmatively that the judgments could not have been enforced against the property of Joseph Howard in his life-time, or under the act of 1850, after his death. The General Term seems to have based its decision upon the same ground.

Upon this report a judgment was entered up against the plaintiff for costs of the action; from that judgment the plaintiff appealed to the General Term, where the judgment was affirmed. The case is now presented to this court by appeal from the judgment of the General Term.

I. The referee seems to have assumed the law to be, that in case of a joint judgment against two debtors — the one living and the other dead — no equitable relief can be had against the living debtor, till the judgment creditor has

exhausted his legal remedy against the dead one. Or else he assumed the law to be: that if the judgment creditor fails during the life-time of the deceased debtor to exhaust his remedy at law, against him, he will forever thereafter, be barred of all equitable relief against the surviving debtor. He also assumed the law to be, that in case the deceased debtor die seized of real estate, the creditor must, under the act of 1850, apply to the surrogate of the county in which the land is situate, for leave to issue execution against, and sell such real estate, and that he cannot in such case proceed against—in equity—the surviving joint debtor.

It is submitted, that neither of these theories accords with the law, or is sustained by any adjudication whatsoever.

1. Suppose these theories to be accurate, they suggest the following incongruities:

(*a*) In this very cause Mills, a joint judgment debtor, is alleged to be living, but at the time of the commencement of this action, insolvent. There is no pretext that the legal remedy against him has ever been exhausted, or even appealed to. There is no denial that during the period from the recovery of the judgment, up to the time of the commencement of this action, the judgment could not have been collected by issuing an execution against him. Yet it is not doubted that the remedy here sought, might be had notwithstanding—nor is there any doubt that he is properly omitted as a party to this action.

How then can it be claimed that this same omission, so harmless in the case of one of the joint debtors, should be so injurious in the case of the other?

(*b*) In case of the decease of one of several joint debtors, a suit at law goes against the survivor only. The allegation that one of the joint debtors is dead, is a sufficient answer to a demurrer, for the non-joinder.

In such case there can be no pretense, that a bill in equity would not lie against the surviving joint debtor alone; upon the judgment against him. Why should the case be different when the judgment is got before death, against the debtors jointly?

(*c*) If insolvency be sufficient to excuse the not making a joint judgment debtor a party to a suit in equity, *à fortiori* death should be.

(*d*) The theory that a party must negative the possibility of obtaining satisfaction of his judgment, under the act of 1850, would require him to resort to a local magistrate before he would be entitled to the aid of a court of equity.

The statute of 1850, places it in the discretion of the surrogate, to permit, or to refuse to permit, a party to issue an execution after the death of the judgment debtor. From such exercise of discretion there is no appeal, and in case of its refusal the creditor would be remediless.

The referee seems to have regarded the deceased debtor as the one who should pay the whole debt — and thus devolve it upon his legal representatives to compel contribution from the living debtor — a proceeding, it would seem, less equitable and more expensive than to enforce the whole against the surviving debtor, and leave him to obtain contribution of the estate of his deceased joint debtor.

II. The objection taken by the referee was, so far as it ever had any force, an objection to the jurisdiction of the late Court of Chancery — a court of limited jurisdiction — and never was, and cannot be, an objection to the jurisdiction of the Supreme Court, whose jurisdiction is general, always presumed, and cannot be objected to, save when facts are distinctly shown to exist, which have the effect to oust it of its jurisdiction. In the Supreme Court it could, at most, be only a question of practice.

The case was sent to the referee by the court, "to hear and determine all the issues therein, and report thereon with all convenient speed." He was not required to examine and report upon the jurisdiction of the court over the case, or into the practice thereof. Surely, no issue was joined — no such question referred to him.

III. The ruling of the referee in this case, is inapplicable to a case pending in a court of general jurisdiction.

The presumption in such a court is in favor of its jurisdiction, while, in a court of limited jurisdiction — like the

old Court of Chancery — the presumption is against its juris-
diction. Hence, however accurate the referee might have
been, had the case been pending in the Court of Chancery,
he should, in this case, have reasoned thus, "it not appearing
affirmatively, that the legal remedy was not exhausted, the
presumption is that it was, and, therefore, the action may be
maintained.

1. Had the defendant desired to raise such an objection,
he should have set up in his answer, that such remedy was
not exhausted, and proved it on the trial.

2. This objection, not going to the jurisdiction of the
court — the General Term admit that it does not (see opin-
ion) — and it not being to the effect that the complaint does
not state facts sufficient to constitute a cause of action, is
waived by the omission to take it either by demurrer or in
the answer. (Code, § 148.)

IV. It was not necessary that the plaintiff should have
exhausted his remedy against all the judgment debtors by
execution, or otherwise, before going into a court of equity
to compel the defendant Fremont to pay over to him moneys
due to the defendant Howard, to be applied in satisfaction
of the judgments in question. (2 Story's Eq. Juris. 1216 b.
to 1218.)

1. This is not the creditor's bill provided for in the Revised
Statutes. Such a bill is a bill of discovery. The language
of the statute (2 R. S. m. p. 173, § 62) is as follows: "When-
ever an execution against the property of a defendant shall
have been issued on a judgment at law, and shall have been
returned unsatisfied, in whole or in part, the party suing out
such execution may file a bill in chancery against such
defendant and any other person, to compel the discovery
of any property or thing in action belonging to the defend-
ant," etc.

In the *Chautauque Bank* v. *White* (6 N. Y. 252), the court
say: "The provisions of the Revised Statutes apply to cred-
itor's bills, strictly so called, where the only claim to relief
is, that the remedy of the creditor is exhausted at law. In
those cases, an execution must be returned unsatisfied, and

this alone confers jurisdiction upon the Court of Chancery to compel a discovery, and afford the relief mentioned in the 39th section."

The bill in this action neither asks nor requires any discovery whatever. It simply asks the appropriation of certain specific property to the satisfaction of a certain debt.

We are pursuing a mere right in equity, never attainable at law, or vendible under a *fi. fa.*

2. If, in an action at law, the court is bound to administer all the equitable remedies the nature of the case, in any stage of it, may seem to require, in order that the parties may have in the one action the same relief that could be had if a bill were filed for such precise relief (see *Foot* v. *Sprague*, 12 How. 355; *Dobson* v. *Pierce*, 2 Ker. 166), how is it possible to say that equity has no jurisdiction until after all legal remedies are exhausted? The blending of the two jurisdictions into one must necessarily have the effect to do away with whatever force that principle or rule ever had.

3. There is no equity in requiring legal remedies to be exhausted, or an execution to be returned unsatisfied, before compelling a party to satisfy a judgment, and even if there were, who could invoke it? Certainly, not a delinquent debtor, one who had property with which he ought to pay a judgment, and yet refuses or neglects to pay it.

4. The legislature has recognized this principle. Section 294 of the Code provides for enforcing the payment of a judgment from the equitable property of the judgment debtor, even before any execution is returned, and while it is in the hands of the sheriff. Is it pretended that in this enactment the legislature have violated any equitable principle? Is not this court bound to recognize a principle so clearly involved in a legislative enactment as a part of the statutes of the State?

5. It will be observed that the case shows that execution in due form of law was issued on those several judgments to the sheriff of the county of New York, and by him duly returned unsatisfied. It does not appear where Joseph Howard resided at the time of issuing these executions; but it

does appear that he was at the time carrying on business in the city of New York. There is no allegation, either in the pleadings or the proof, that he did not then reside in that county.

6. It will be further observed, that the statute does not require the execution to be issued to the sheriff of the county in which the judgment debtor resides, though the Court of Chancery seem to have required it; not, however, as interpreting the statute to require it, but on the principle that, as a court of limited jurisdiction it could not assume jurisdiction unless it affirmatively appeared that all legal remedies had been exhausted.

But even in England, where, by reason of the jealousy that prevailed in the various courts at an early period of their history, this principle was carried to the extremest limit, it was never held that an execution need be returned unsatisfied unless a general discovery was sought. In *Taylor* v. *Hill* (1 Eq. Ca. Abr. 131, pl. 15), the bill was by a judgment creditor before execution, for discovery of particular specified effects of his debtor in the hands of a third person, and it was allowed, upon demurrer. But the chancellor said, it would not lie against the debtor himself, nor against a third person, to have a general discovery.

In *Leith* v. *Pope* (Dickens, 575), a judgment creditor filed a bill for the discovery of assets, under the idea that the debtor had made a voluntary assignment; Lord THURLOW overruled a demurrer to the whole bill as "too large."

In *Manningham* v. *Bolingbroke* (cited in Mitford Tr. p. 115, and in Cooper Tr. 149), which, I infer, sought a general discovery, it was said, that, though an execution be necessary, yet the return of it, *nulla bona*, need not be shown.

7. There are numerous decisions that impliedly negative this doctrine.

Take the following as examples:

(a) Those that, like *Corning* v. *Stebbins* (1 Barb. Ch. 589), hold that if an execution upon the judgment has been returned at any time within ten years prior to the filing of the bill, it is sufficient.

These cases, in effect, declare that it is not necessary to show that at no time during the existence of the judgment, could it have been collected upon execution — the precise question now under argument.

(*b*) Those that, like *Stoors* v. *Kelsey* (2 Paige, 418), hold that, although the judgment debtor has property in the county, to which, after the return of the execution, he calls the attention of the sheriff, and asks him to advertise and sell it, and thereby satisfy the judgment, yet such fact is no defense to the creditor's bill.

These cases also, in effect, declare it is not necessary to show that at no time during the existence of the judgment, could it have been collected upon execution — the precise question now under discussion.

(*c*) Those that, like *Legget* v. *Hopkins* (7 Paige, 149), hold that, when an execution has been issued to one county, and returned unsatisfied, an allegation in the answer that the debtor has property in another county, out of which the judgment might have been collected, is immaterial.

These cases also, in effect, declare that it is not necessary to show that at no time during the existence of the judgment, could it have been collected upon execution — the precise question now under consideration.

8. The referee himself, in his findings in this very case, has negatived this doctrine.

(*a*) There is no proof in the case, that there have not been times during the existence of these judgments, at which they could have been collected upon execution, out of the property of John T. Howard.

(*b*) There is no proof in the case, that there have not been times during the existence of one of these judgments, at which it could have been collected upon execution, out of the property of Mills.

The referee seems to have been more concerned for the dead than for the living. He holds that the fact of the insolvency of John T. Howard and Mills, at the time of the commencement of the action, was sufficient to enable this court to exercise its equitable jurisdiction; but that the fact that

Joseph Howard was dead at that time, was not sufficient to enable this court to exercise its equitable jurisdiction.

He forgot that no one is here in this action interposing for the rights of the dead man. The dead man could not have been made a party, nor could his executors, administrators or heirs have been made parties. A bill of this character will not lie against executors, administrators or heirs, either alone or jointly with others. The surviving judgment debtor is liable *in solido* for the judgment, and if he pay it, he may have contribution of the representatives of his deceased co-debtor. But a creditor's bill, or a bill of the character of the complaint in this action, will not lie against such representatives of a dead man.

9. Suppose the doctrine of the referee were to be declared to be law, consider what would be the consequences of such a doctrine.

10. Suppose Joseph Howard died the day before this action was commenced, possessed of personal property sufficient to pay the judgments in question, of which property he had been the open and acknowledged owner for ten years previous to his death, then the supposition of the referee would be the fact. No action then could be maintained against John T. Howard upon the one judgment, nor against John T. Howard and Mills upon the other. The plaintiff would be remediless against them, and would be compelled to proceed against the representatives of the dead man, and collect the judgments out of his estate, though it took the last shilling. In such case, John T. Howard and Mills go scot free of the payment of the judgments; unless, indeed, these representatives should, after satisfying the judgments, proceed against them for contribution.

I need not argue to this court that such a doctrine cannot be the law of the land.

Judgment absolute should, therefore, be ordered for the appellant, with costs.

*E. H. Owen*, for the respondent.

I. The referee properly dismissed the complaint.

1. The complaint in this case is, in all respects, like the bill in chancery commonly known as a "creditor's bill." It contains the same averments, and its scope and object is to obtain satisfaction of the judgments out of the property of the judgment debtor. (Compare the complaint with the precedents of creditor's bills in the late Court of Chancery. 3 Hoff. Ch. Pr., p. 224; 2 Barb. Ch. Pr., p. 587.)

2. The remedy formerly known as a "creditor's bill" was given by statute (which was declaratory of a principle that had been before adopted in courts of equity, and could not be resorted to until the remedy at law upon the judgment had been fully exhausted). It was necessary, therefore, that the bill should show affirmatively a *bona fide* attempt to collect the debt by execution against the property of the judgment debtor; and where there were several defendants in the judgment, who were jointly holden for the payment thereof, it was necessary to aver that such *bona fide* attempt had been made, and the remedy at law had been exhausted against all the judgment debtors, before relief could be sought in equity. (*Child* v. *Brace*, 4 Paige, 309; *Reed* v. *Wheaton*, 7 id. 663; *Merch., etc., Bank* v. *Griffith*, 10 id. 519; *Howard* v. *Sheldon*, 11 id. 558; *Chau. Co. Bank* v. *White*, 2 Seld. 252.)

3. Such remedy, in equity, against the judgment debtor, is not taken away by the Code, but still exists, and the creditor is not entitled to his equitable action until he has made the same *bona fide* attempt to collect the judgment as formerly; and it must appear in the complaint that an execution has been issued and delivered to the sheriff of the county where the judgment debtor resided, and that the same had been returned unsatisfied, or satisfactory reasons must be shown for not doing so. (*Campbell* v. *Foster*, 16 How. Pr. 275; *Hammond* v. *Hud. River Iron, &c., Co.*, 20 Barb. 378; *Field* v. *Chapman*, 13 Abb. Pr. 320; *Crippen* v. *Hudson*, 3 Kern. 161; *Dunlevy* v. *Tallmadge*, 32 N. Y. 457; *Beardsley Scythe Co.* v. *Foster*, 36 id. 561.)

4. The plaintiff has neither averred in his complaint in this action, nor proved, that the remedy at law had been exhausted upon the judgments.

(*a*) The averment is, that the two judgments had been recovered against Joseph Howard and John T. Howard, upon which executions were issued to the sheriff of the city and county of New York, " the county in which the said John T. Howard then resided," which were returned unsatisfied. It is then averred, that John T. Howard " has no visible or tangible property that is subject to execution," but there is no positive averment that the executions, if issued against Joseph Howard, were issued to the sheriff of the county in which he resided, or that he resided in New York, where the executions were issued, or that, after the judgment, and before and at the time of his death, he had not any visible property subject to execution to satisfy the judgment.

(*b*) It appears, by the complaint, that Joseph Howard, the deceased, as well as John T. Howard, the survivor, was jointly holden for the payment of the judgments. They were recovered against both, and both were liable to pay the amount thereof. The plaintiff was bound, therefore, to show that he had exhausted the remedy at law against the deceased judgment debtor, as well as the survivor, which he failed to do. (*Child* v. *Brace,* 4 Paige, 309 ; *Howard* v. *Sheldon,* 11 id. 558 ; *Field* v *Chapman,* 13 Abb. Pr. 320.)

(*c*) Although the averment that Joseph Howard died before the commencement of the suit is a sufficient reason for his not being made a party defendant, yet it does not relieve the plaintiff from averring and proving that the remedy at law as against him had been exhausted. It does not appear when he died, but it was after the issuing of the executions upon the judgments. The time, however, is not material, for an execution might have been issued and levied upon his property after his death in the same manner and with the same effects as if he were living. (Sess. Laws, 1850, p. 639, ch. 295.)

(*d*) The plaintiff should, therefore, have averred and proved that an execution had been issued upon the judgments against Joseph Howard, and delivered to the sheriff of the county where he then resided, and which had been returned unsatisfied, or he should have averred, as an excuse

for omitting the same, that from the time of the recovery of the judgment until and at the time of his death, he was insolvent, and had no property liable to execution. Having failed to show either, the complaint was insufficient, and did not allege facts sufficient to constitute a cause of action, and it was, therefore, properly dismissed. (Code, §§ 144–148.)

II. The exceptions taken to the referee's report, do not apply to the question upon which the decision of the referee was based, and, therefore, it is not material to consider them at length. They relate to the defendant, John T. Howard, and to set-off, and in nowise enter into or affect the question upon which the complaint was dismissed.

III. The objections and exceptions taken on the part of the plaintiff on the trial, relate to the set-off claimed by the defendant, John T. Howard, but the complaint was dismissed on other grounds, in nowise requiring the consideration of that defense.

BACON, J. The complaint in this case is the ordinary creditor's bill, designed to reach property alleged to be in the hands of the co-defendant, Fremont, for the purpose of applying it to the satisfaction of two judgments held by the plaintiff. These judgments were recovered against the defendant, John T. Howard, and his brother, Joseph Howard, on joint contracts. Joseph Howard is alleged to have been deceased at the time this suit was commenced, but there is no other allegation, nor any proof in the case, as to the time of his death. There is no allegation or proof as to his residence when the executions were issued, nor in respect to his condition as to property; and for any thing that is made to appear, he may have been living when the executions were issued and returned, and have possessed personal property at his place of residence, sufficient to satisfy the executions, or real estate, on which the judgments were liens, adequate to their full satisfaction. The only allegations in the complaint touching the executions are, that they were issued to the sheriff of the city and county of New York, where John T.

Howard resided, and had a place of business, and that they were by said sheriff returned unsatisfied.

These being the only facts appearing upon the trial, the referee held and decided that the legal remedy of the plaintiff to obtain satisfaction of the judgments had not been exhausted; and, therefore, the plaintiff had not shown himself entitled to the remedy demanded in the complaint, and he rendered judgment dismissing the complaint, with costs, which judgment, on appeal to the General Term, was affirmed.

The remedy sought by a creditor's bill, was one well known to the courts of equity before it had been recognized, and to some extent regulated by the Revised Statutes. It was always necessary under both systems, that the bill should show affirmatively that an honest attempt had been made to collect the debt by the issuing and return of an execution against the judgment debtor, and where there were several defendants jointly liable thereon, that such effort had been made, and such remedy exhausted against all the judgment debtors, before jurisdiction would be entertained in chancery. The authorities are full and uniform to this effect. It is sufficient to cite *Child* v. *Bruce* (4 Paige, 309); *Reed* v. *Wheaton* (7 id. 663).

This requirement has not been in any respect changed or modified by the practice as it now exists under the Code. It is still just as necessary as it ever was to exhaust the legal remedy before equitable relief can be sought. Such relief is based on the same principles, notwithstanding it may be sought and obtained under a system in which the two jurisdictions are combined in the same tribunal. That tribunal extends equitable relief upon equitable principles, and the party who invokes its aid in this form must comply with the rules it has established.

Since the enactment of the Code the decisions have been to the same effect, and have maintained the same principles as had before been established. This was so held in *Crippen* v. *Hudson* (13 N. Y. 161), where the court say, that the union of legal and equitable jurisdictions in the same court does not furnish any good reason for a departure from the well estab-

lished rule in equity. In *Dunlevy* v. *Tallmadge* (32 N. Y. 459), WRIGHT, J., says: "A court of equity does not intervene to enforce the payment of debts (whether individual or partnership debts), and it is only after the creditor has taken and exhausted all the means in his power at law, that he will be entitled to its aid to discover and apply the debtor's property to satisfy his claims. An execution must have been issued on the judgment and been returned unsatisfied. This is essential to the jurisdiction of the court, though there be nothing that could be reached by execution at law."

The plaintiff here has neither averred nor proved that his remedy at law had been exhausted upon these judgments. Although the averment, that Joseph Howard died at some time before the present suit was commenced, was a sufficient reason for not making him a defendant in the action, it did not relieve the plaintiff from the obligation of averring and proving that, as against all the defendants, the remedy at law had been exhausted. As to Mills, a third defendant in one of the judgments, there is an averment of his utter insolvency as an excuse for his omission as a defendant, and also for not seeking any remedy against him by the issuing and return of an execution; but there is no such averment in relation to Joseph Howard.

The judgment was, therefore, right, and must be affirmed.
Judgment affirmed.